MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 58
Docket:         Yor-25-416
Argued:         March 4, 2026
Decided:        July 9, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

JUDITH ANDREWS

v.

TOWN OF KITTERY et al.

DOUGLAS, J.

[¶1]  Judith Andrews appeals from a judgment of the Superior Court (York County, *Mulhern, J.*) affirming the Town of Kittery Planning Board's approval of a conservation subdivision application submitted by Chip and Anne Andrews (the applicants).[1]  She argues that the Planning Board usurped the exclusive authority of the Town of Kittery Board of Appeals to grant zoning variances when it waived street standards in the Town's Land Use and Development Code in approving the applicants' proposed conservation subdivision.  We conclude that the Planning Board acted within its authority and affirm the Superior Court's judgment.

---

[1]  The appellant and the applicants have the same surname.  To avoid confusion, we refer to Judith Andrews as "Andrews" and Chip and Anne Andrews jointly as "the applicants."

## I. BACKGROUND

[¶2]   The relevant facts are procedural, and we draw them from the record before the Planning Board.  *See Upstream Watch v. City of Belfast*, 2023 ME 43, ¶ 2, 299 A.3d 25.  In February 2022, the applicants applied to the Town Planner of Kittery for sketch plan review of a proposed subdivision.  *See* Kittery, Me., Land Use and Development Code ("Code") § 16.8.9(B)(1) (Jan. 24, 2022).  The Planning Board approved the sketch plan concept at a March 23, 2023, meeting.  *See id.* § 16.8.9(B)(2).  The applicants subsequently, on September 7, 2023, submitted a preliminary application for approval of a major conservation subdivision.  *See id.* § 16.8.9(C).

[¶3]   To be approved by the Planning Board, "[a] conservation subdivision must meet all requirements for a subdivision . . . except as modified by Chapter 16.10 and/or action of the Planning Board, where authorized."  *Id.* § 16.10.5(B) (emphasis omitted).  Chapter 16.8, "Subdivision Review," is the chapter of Title 16, titled "Land Use and Development Code," that sets out the general standards and process for review and approval of a proposed subdivision.  Relevant here are the standards governing street design and construction, which are found in a table that is incorporated by reference into chapter 16.8 and entitled "General Performance Standards, 16.8 Attachment 1,

Town of Kittery, Table 1." *See* Code ch. 16.8 attach. 1. Table 1, "Design and Construction Standards for Streets and Pedestrianways," prescribes design standards applicable town-wide for all public and private streets in subdivisions. *Id.* Among its standards are those governing the street width (e.g., width of the right-of-way, travel pavement, and paved shoulder) and street gradient (e.g., longitudinal, side slope, and road crown) as well as the design of intersections and the required materials. *Id.* Table 1 designates three classes of private streets—Class I, Class II, and Class III—depending upon the anticipated volume of vehicular traffic. *Id.*

[¶4] In addition to specifying the criteria for evaluating proposed subdivisions, chapter 16 empowers the Planning Board to "waive or modify certain required improvements." *Id.* § 16.8.7(A). Section 16.8.7 provides,

> A. Waiver authorization. Upon written request, the Planning Board *may waive or modify certain required improvements, due to special circumstances of a particular plan, if the applicant demonstrates that the interest of public health, safety, the natural environment, and general welfare are not harmed,* or if those improvements are inappropriate because of inadequacy or lack of connecting facilities adjacent or in proximity to the proposed development, subject to appropriate conditions as determined by the Planning Board, and provided the waivers do not have the effect of nullifying the intent and purpose of the Comprehensive Plan and Title 16.

4

> B. Objectives secured. In granting modifications or waivers, the Planning Board must require such conditions as will, in its judgment, secure substantially the objectives of the requirements so waived or modified. The Planning Board is not obligated to consider the costs of required improvements when reviewing waiver or modification requests. The Planning Board shall consider the provisions in § **16.2.12F**, Basis for decisions, when reviewing such waiver or modification requests.
>
>> (1) Any waivers granted must improve the ability of the project to take the property's predevelopment natural features into consideration. Natural features include but are not limited to topography, location of water bodies, location of unique or valuable natural resources, and relation to abutting properties or land uses.

*Id.* § 16.8.7 (emphasis added).

[¶5] The September 7 preliminary application included a request for a waiver of applicable street standards in section 16.8, Table 1. Specifically, the application requested that the proposed subdivision include two private streets that would satisfy all Class II requirements except that they would exceed the maximum allowed length for a Class II street. Hence, the applicants requested that the Planning Board "allow the proposed Class II streets to be constructed at their proposed lengths should the design receive signoff from the Police Chief and Fire Chief."

[¶6]  On October 16, 2023, the applicants submitted revised plan sheets reflecting changes to address, among other things, comments from town staff suggesting that the streets "be built to the standards of a Class III private street." The October 16 submission proposed "switching from Class II to Class III private streets" and requested associated waivers pertaining to the width and gradient of the street as well as the width of a "sidewalk/pedestrianway." *See* Code ch. 16.8 attach. 1.

[¶7]  On October 26, 2023, the Planning Board held a public hearing on the application.  Andrews, an owner of land on the same road as the proposed subdivision, expressed opposition to the application.  The applicants thereafter made revisions unrelated to the waivers at issue here and submitted a final application for approval in June 2024.  *See* Code § 16.8.9(D).

[¶8]  On August 5, 2024, Andrews filed a letter with the Planning Board opposing the proposed subdivision.  Among other things, she argued that the requested waiver of the street standards was unlawful because "the Code does not provide the [Planning] Board with the authority to grant the waivers [the applicants] rely on for the Subdivision to be approved."  In a letter submitted on August 19, 2024, Andrews further contested the applicants' waiver request.

6

[¶9]  In early October 2024, the applicants made final revisions to the plans, and the Planning Board voted on the application at its October 24, 2024, meeting.  The Planning Board determined by a vote of 5-2 that "[t]he proposed development conforms to a duly adopted Comprehensive Plan as per adopted provisions in the Town Code, zoning ordinance, subdivision regulation or ordinance, development plan or land use plan, if any" and  that "the requested waivers met the special circumstances and objectives set in the Subdivision Review Ordinance in . . . § 16.8.7."  Because "the applicant ha[d] satisfied each of the review standards for approval," the Planning Board "grant[ed] final approval for the Development . . . including any waivers granted or conditions as noted."[2]

---

[2]  Specifically, the board found that with the following modifications "the proposed subdivision and wetland alteration application conform[ed] to Title 16 and the dimensional standards in the applicable zone and overlay zones" and thus "posed no adverse impact to public health, safety, natural environment, or general welfare":

1.  Modification to the Class III ROW [right-of-way] minimum width from 60 feet to 40 feet, with a travel pavement minimum of 23 feet and 1 foot gravel shoulders.
2.  Modification to the Class III ROW maximum length from 1,200 feet to 1,450 feet for the proposed Acorn Lane.
3.  Modification to the Class III ROW maximum grade from 8 to 9%.
4.  Waiver of the Class III ROW requirement of 5 feet [sic] sidewalks, in lieu of a 3-foot paved pedestrian travel way along one side of the road.

[¶10]  On December 9, 2024, Andrews filed a petition in the Superior Court seeking judicial review of the Planning Board's decision.[3]  The parties submitted briefs, and the court entered a judgment on August 7, 2025, affirming the decision of the Planning Board.  The court concluded that the street standards were waivable subdivision standards, not zoning requirements for which a variance from the Board of Appeals would be required.  Andrews timely appealed from the Superior Court's judgment.  *See* 14 M.R.S. § 1851 (2026); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶11]  When, as here, the trial court acts in an appellate capacity, we review directly the Planning Board's decision.  *Cannon v. Town of Mount Desert*, 2025 ME 86, ¶ 6, 345 A.3d 115.  Andrews, as the party seeking to vacate the

---

[3] Section 16.2.12(B)(1) of the Code provides that an aggrieved party may seek judicial review of a final decision of the Planning Board "within 45 days from the date the decision by the Planning Board was rendered."  The Planning Board's final decision advised that "[a]n aggrieved party with legal standing may appeal a final decision of the Planning Board . . . within forty-five (45) days from the date the decision by the Planning Board was rendered."  The forty-fifth day after the October 24 Planning Board decision was Sunday, December 8, which means that the applicants' Monday, December 9, filing of their petition for judicial review would satisfy the forty-five-day deadline in Code § 16.2.12(B)(1) and referenced in the final decision.  *See* M.R. Civ. P. 6(a).  We invited supplemental briefing on the timeliness of the Superior Court petition, however, because the statutes and rules governing land use appeals require that a petition for judicial review be filed within thirty days after the date of the decision challenged.  *See* 30-A M.R.S. §§ 4482, 4482-A (2026); M.R. Civ. P. 80B(b).  Because the Town plainly did not provide accurate notice of the manner of seeking judicial review and  the matter proceeded in the Superior Court without any challenge to timeliness, we assume without deciding that the appeal period itself did not begin to run or was tolled and address the merits of the appeal.  *See Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1161 (Me. 1992); *Seider v. Bd. of Exam'rs of Psychs.*, 1998 ME 78, ¶ 5, 710 A.2d 890.

8

Planning Board's decision, "bear[s] the burden of persuasion on appeal." *Id.* ¶ 7. Absent ambiguity in statutes or ordinances, we construe their language de novo based on the plain meaning they convey, read in harmony with the entire statutory or regulatory scheme. *See Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903; *Beckford v. Town of Clifton*, 2014 ME 156, ¶ 9, 107 A.3d 1124; *Town of China v. Althenn*, 2013 ME 107, ¶ 6, 82 A.3d 835; *Cumberland Farms, Inc. v. Town of Scarborough*, 1997 ME 11, ¶ 6, 688 A.2d 914.

[¶12] Andrews contends that the Planning Board "simply lacked the authority to waive" the street design standards in Section 16.8 and therefore its decision approving the proposed conservation subdivision must be vacated. Essentially, her argument is that the waivers of the street standards were impermissible variances that may be granted only by the Town's Board of Appeals consistent with 30-A M.R.S. § 4353 (2026).

[¶13] Andrews's invocation of section 4353 is misplaced. Section 4353 provides that a "municipality which adopts a zoning ordinance shall establish a board of appeals," *id.*; empowers a board of appeals to "hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordinance," *id.* § 4353(1); and authorizes a board of appeals to grant variances from a zoning ordinance's requirements "when strict application of

the ordinance to the petitioner and the petitioner's property would cause undue hardship," *id.* § 4353(4), as well as in other specified circumstances, *see id.* § 4353(4-A) (disability variance), (4-B) (setback variance for dwellings that are primary year-round residences), (4-C) (variance from dimensional standards "relating to lot area, lot coverage, frontage and setback requirements"). The waivers at issue here do not involve variances from particular, zone-specific standards in a zoning ordinance.

[¶14] Strictly speaking, a "zoning ordinance" is a particular type of land use ordinance, namely one "that divides a municipality into districts and that prescribes and reasonably applies different regulations in each district." 30-A M.R.S. § 4301(15-A) (2026). By contrast a "land use ordinance" is "an ordinance or regulation of general application adopted by the municipal legislative body which controls, directs or delineates allowable uses of land and the standards for those uses." *Id.* § 4301(8).

[¶15] When an ordinance "regulates in a general and uniform city- or town-wide manner," the ordinance "does not constitute zoning, which is the particularistic division of the city into zones for the purpose of applying different proscriptions and reasonable application of different regulations in the different zones." *LaBay v. Town of Paris*, 659 A.2d 263, 265 (Me. 1995)

(quotation marks omitted). More to the point here, "[r]egulation of a subdivision is not zoning." *Shadan v. Town of Skowhegan*, 1997 ME 187, ¶ 15, 700 A.2d 245. "Rather, such regulation protects the public health, safety, and welfare through the imposition of reasonable site-specific restrictions that ensure municipal control by flexible and practical means." *Id.* (quotation marks omitted). Such nonzoning requirements may be waived or modified by a planning board. *See id.* ¶¶ 14-15.

[¶16] Andrews's resort to several of our past decisions to support her argument that the street standards at issue here are zoning standards requiring a variance and fall beyond the Planning Board's waiver authority in section 16.8.7 is also unavailing. *See, e.g., Perkins v. Town of Ogunquit*, 1998 ME 42, 709 A.2d 106; *Sawyer v. Town of Cape Elizabeth*, 2004 ME 71, 852 A.2d 58; *York v. Town of Ogunquit*, 2001 ME 53, 769 A.2d 172. In *Perkins v. Town of Ogunquit*, for example, a municipal board of appeals denied an applicant's request for a variance from a street-frontage requirement because the applicant could not establish hardship. 1998 ME 42, ¶ 4, 709 A.2d 106. The planning board thereafter waived the requirement, which the municipal ordinance authorized in the case of certain older buildings. *Id.* We affirmed the trial court's conclusion that the ordinance violated section 4353 by conferring the power to

grant a variance on a planning board, when the Legislature had reserved that power for a board of appeals. *Id.* ¶ 9. We acknowledged that some ordinances establish general, municipality-wide standards and are not zoning ordinances focused on dividing land into districts with unique requirements,[4] *id.* ¶ 11, but concluded that the waiver provision in that case had the effect of authorizing a circumvention of a zoning requirement because it failed "to take into account the purposes of the frontage requirements *of the zone*," *id.* ¶¶ 12-15 (emphasis added).

[¶17] Similarly, in *Sawyer v. Town of Cape Elizabeth,* we concluded that there had been a violation of section 4353 when a planning board's "modification" of a setback requirement conflicted with a mandatory open-space zoning standard. 2004 ME 71, ¶¶ 1-5, 852 A.2d 58. There, the zoning ordinance imposed open-space standards but authorized the planning board to modify the standards. *Id.* ¶ 4. We held that the ordinance authorizing the planning board's modification of zoning violated section 4353 by allowing a planning board to essentially replace zoning standards. *Id.* ¶¶ 7, 11-19.

---

[4] Andrews misapprehends the case law in arguing that standards of general applicability—as opposed to subdivision-specific standards—inherently constitute nonwaivable zoning regulations.

[¶18]   In *York v. Town of Ogunquit,* a planning board had approved a subdivision upon waiving compliance with (1) a zoning ordinance road-width requirement for "collector streets" and (2) several subdivision standards regarding road grade, cul-de-sac street design, connections to a public street, and sidewalk width.  2001 ME 53, ¶¶ 2, 4 & n.4, 10-11, 769 A.2d 172.  We held that the planning board did not err in waiving compliance with the subdivision standards that established general street standards but did lack the authority to waive compliance with the specific provision required by the zoning ordinance for the particular zone in which the proposed subdivision was situated. *Id.* ¶¶ 10-13.

[¶19]   The waivers involved here—specifically, general standards pertaining to the width of the right-of-way, the street gradient, the maximum street length, and the composition and width of the sidewalk/pedestrianway— are found in Table 1, attached to the Code.  Code ch. 16.8 attach. 1.  These standards are referenced generically in the zoning regulations creating the R-RL Zone, Code § 16.4.10(D)(1), but are outlined in the chapters establishing general performance standards (chapter 16.5) and subdivision review (chapter 16.8). *See id.* § 16.5.27(D).   Unlike the zoning regulation in *York*, which established a specific street width *for the zone*, 2001 ME 53, ¶ 11, 769 A.2d 172,

the Code provision establishing the R-RL Zone here merely references and directs compliance with the generally applicable street standards, *see* Code § 16.4.10(D)(1), ch. 16.8 attach. 1.  The street standards in chapter 16.8 apply generally to promote public health and safety, *see Shadan*, 1997 ME 187, ¶ 15, 700 A.2d 245, and are not regulations establishing the division of the Town into zones that have different characteristics and development densities, *see LaBay*, 659 A.2d at 265.

[¶20]  The structure of the Code comports with section 4353's limitations by distinguishing between general design and performance standards on one hand and core zoning requirements, such as dimensional standards applicable in a specific zone, on the other hand.  In the R-RL zone, a subdivision applicant must comply with the subdivision standards as provided in chapter 16.8, but chapter 16.8, which applies to more than just the R-RL zone, includes the waiver provision.  *See* Code §§ 16.4.10(D)(1), 16.8.7.  The generally applicable, waivable street standards are not zoning standards that an applicant may be excused from satisfying only by variance.

[¶21]  Finally, although the Land Use and Development Code incudes a broad purpose statement indicating that Title 16 as a whole is "designed for all the purposes of zoning embraced in the Maine Revised Statutes," including a

purpose to promote traffic safety, *id.* § 16.1.2(A), (B)(2), the Code allows the Planning Board to waive improvements only when appropriate conditions are imposed to vindicate the interests that those improvements safeguard. *Id.* § 16.8.7(A). As the interests at issue here are traffic safety concerns that apply across zones, the street standards are a proper subject for Planning Board waiver, and there has been no violation of section 4353. *See Shadan*, 1997 ME 187, ¶ 15, 700 A.2d 245.

[¶22] We conclude that the Planning Board did not intrude on the exclusive authority of the Board of Appeals to grant a variance and therefore affirm the Superior Court's judgment affirming the Planning Board's decision.

The entry is:

> Judgment affirmed.

---

Sean R. Turley, Esq. (orally), Murray Plumb & Murray, Portland, for appellant Judith Andrews

Thomas Federle, Esq. (orally), Archipelago Law, Portland, for appellees Chip Andrews and Anne Andrews

Cameron Ferrante, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellee Town of Kittery

York County Superior Court docket number AP-2024-41